UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SCHLUMBERGER TECHNOLOGY | § | |
| CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-454 |
| | § | |
| COIL TUBING SOLUTIONS, LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER ON MOTION TO DISMISS

Schlumberger Technology Corporation (Schlumberger) filed this action against Coil Tubing Solutions, LLC (CTS), alleging that CTS embarked on a campaign to damage Schlumberger's business in Texas, North Dakota, and Louisiana by raiding Schlumberger's employees and diverting its customers, using unfair trade practices, unfair competition, and trademark dilution to do so.  Before the Court is CTS's "Motion to Dismiss Under Rule 12(b)(6)" (D.E. 8), challenging Schlumberger's causes of action and arguing that the facts pled reveal nothing more than ordinary business competition. For the reasons set out below, the Court DENIES the motion.

### STANDARD OF REVIEW

The test of pleadings under Rule 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of time, money, and resources devoted to adjudicating meritless claims.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to

relief."  Furthermore, "Pleadings must be construed so as to do justice."  Rule 8(e).  The requirement that the pleader show that he is entitled to relief requires "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Factual allegations are required, sufficient to raise the entitlement to relief above the level of mere speculation.  *Twombly*, 550 U.S. at 555.  Those factual allegations must then be taken as true, even if doubtful.  *Id*.  In other words, the pleader must make allegations that take the claim from conclusory to factual and beyond possible to plausible.  *Id*. at 557.  The *Twombly* court stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court, elaborating on *Twombly*, stated, "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  In dismissing the claim in *Iqbal*, the Court stated, "It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." *Id.* at 681.

A motion to dismiss for failure to state a claim upon which relief can be granted can be based not only on a plaintiff's claims but on matters that support an affirmative defense, such as limitations.  Even if some allegations support a claim, if other

allegations negate the claim on its face, then the pleading does not survive the 12(b)(6) review.

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense, *see* Fed. Rule Civ. Proc. 8(c). Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.

*Jones v. Bock*, 549 U.S. 199, 215 (2007).

## FACTS

According to its Complaint (D.E. 1), Schlumberger operates a division under the trademark name Coil Tubing Services (Schlumberger) in Texas, North Dakota, Louisiana, and other locations, offering certain oilfield services.  The division was originally founded by individuals, including Glen Jerry Ritter (Ritter), as an independent business entity.  The founders sold the business to W-H Energy Services, which sold the business to Smith International, Inc., which was acquired by Schlumberger in 2010. Schlumberger then merged the division's operations with similar operations it was already engaged in, with Ritter as President of the division.

Thereafter, Schlumberger developed logos and trademarks for the division's operations, promoting the "Coil Tubing Services" name and using what it refers to as "Schlumberger Blue," the color Pantone No. 280, in marketing materials, on its website, and on trailers and vehicles.  Schlumberger has consistently used the Coil Tubing

Services trademarks to build up substantial goodwill, public recognition, and a standard of high quality services.   Schlumberger argues that the trademarks have achieved secondary meaning and are powerful source identifiers.

By 2013, Ritter had left Schlumberger's division, founding CTS.  Ritter was made President and CEO, with seven of CTS's other executive leadership roles filled by former Schlumberger employees.   According to Schlumberger, at about the same time, CTS recruited at least twenty-two (22) Schlumberger employees, representing one hundred percent (100%) of its operational employees in its Bridgeport/Midland operations, to leave the division and begin working for CTS.  Those employees, in turn, made up the entirety of CTS's operational force in that location.  At least some of those employees were subject to non-competition agreements that were thus breached.

The same thing happened in North Dakota, with Brandon Beesley, a Schlumberger employee who was bound by a non-solicitation agreement for one year after leaving Schlumberger's employ.  Allegedly in violation of that agreement, Beesley went to work for CTS and proceeded to solicit Schlumberger employees to join CTS.  At least eighteen (18) employees from Schlumberger's Minot/Rock Springs operations, representing approximately sixty percent (60%) of its operational employees, made the switch.  Those employees then made up the entirety of CTS's operational force in that location.  CTS also recruited four employees from Schlumberger's Broussard Louisiana operations, who have taken and used Schlumberger's confidential information to unfairly compete for Schlumberger's clients' business on behalf of CTS.

CTS adopted a name confusingly similar to that of Schlumberger's division, substituting only "Solutions" for "Services."  Using offices in close proximity to those of Schlumberger's division, it markets the same services to the same customers, and displays the same or similar color of blue on its website and its trailers.  It even promotes its operations by touting its past connections with Schlumberger and creating confusion regarding the source or origination of its business.  Actual confusion has been noted by one customer's email asking for clarification, another's request for Schlumberger's services being dispatched by CTS, and a payment intended for Schlumberger being received by CTS.

Alleging that these acts were all part of a calculated plan to unlawfully harm Schlumberger in those Texas, North Dakota, and Louisiana operations, to give CTS an unfair competitive advantage, and to dilute or damage its trademarks, Schlumberger asserts the following causes of action:

1. Tortious interference with contractual relations in Texas, in particular:

    o  Interference with at-will employees' confidentiality, non-solicitation, and non-compete agreements; and

    o  Interference with Schlumberger's service contracts with customers and clients.

2. Tortious interference with contractual relations in North Dakota, in particular, collaborating with Brandon Beesley before and after the termination of his employment with Schlumberger and in violation of

his non-solicitation agreement to recruit Schlumberger's employees and degrade Schlumberger's ability to service its contracted customers.

3.  Violation of Louisiana Unfair Trade Practices Act (LUTPA) by raiding Schlumberger's employees, including special services personnel, and using confidential Schlumberger information with the purpose of degrading Schlumberger's ability to service its customer contracts.

4.  False Designation of Origin and False Description under the Lanham Act by causing confusion regarding the sponsorship, endorsement, or approval of its services by use of:

    o   The name "Coil Tubing Solutions," which is substantially similar to "Coil Tubing Services," and

    o   Using "Schlumberger Blue."

5.  Common law trademark infringement and unfair competition under Texas and North Dakota law by creating a likelihood of confusion between Schlumberger's and CTS's services with the intent to deceive the public.

6.  Trademark dilution under Texas and North Dakota law by blurring the distinctiveness and origin of Schlumberger's marks and its reputation and trade name in a way calculated to dilute its marks.

D.E. 1.

CTS has challenged each cause of action and seeks the dismissal of this action in its entirety.  According to CTS, the tortious interference and LUTPA claims should be dismissed because:  (a) recruiting at-will employees is not actionable; (b) limitations bars the Louisiana claims to the extent that they are based on the recruiting of employees more than one year prior to the filing of the case; and (c) the allegations are not sufficiently specific regarding any contracts and proximate cause.  It challenges the trademark claims because:  (a) "coil tubing services" is generic and not eligible for protection; and (b) Schlumberger does not adequately allege secondary meaning.  Each argument is discussed in turn.

## DISCUSSION

### A.  Tortious Interference/LUTPA

#### 1.  The Recruitment of At-Will Employees

Citing authority in all three states, CTS argues that Schlumberger cannot premise a claim for tortious interference on the recruitment of Schlumberger employees because they served on an at-will basis.  Schlumberger cites *Sterner v. Marathon Oil Co*., 767 S.W.2d 686 (Tex. 1989), as making no distinction in the tortious interference context for contracts that are terminable at will.

In Texas, an at-will employee may be lured away without consequence only if no wrongful conduct is involved.  According to the Fifth Circuit, "*Sterner* does not change the rule that mere economic inducement to exercise rights under a contract (i.e., by offering superior employment) does not constitute tortious interference of contract." *Kadco Contract v. Dow Chem. Co*., 198 F.3d 241, *3 (5th Cir. 1999) (not published).

Here, however, Schlumberger has pled that wrongful conduct is involved—particularly the breach of confidentiality, non-compete, and no-solicitation agreements.  In fact, the pleading appears to base the claim on breach of those agreements as much as on a breach or termination of an at-will employment contract.  As CTS impliedly acknowledges in its reply (D.E. 14, p. 3), Texas law does allow a tortious interference claim alleging that type of wrongful conduct.

Whether the party that induces the at-will employee to terminate the contract was simply acting within its rights to offer a better deal is a question of privilege or justification—an affirmative defense with the burden of proof on the defendant under Texas law.  *Sterner,* 767 S.W.2d at 690.  CTS's at-will contract challenge seeks to defeat Schlumberger's tortious interference causes of action by showing that Schlumberger cannot make a prima facie case because its employees served on an at-will basis.  CTS's motion must be denied with respect to the claims involving Texas law.  CTS did not, and cannot, seek dismissal on the basis that it would prevail on its fact-based affirmative defense.

A similar result holds true in North Dakota.  The fact that an employee serves on an at-will basis does not automatically defeat a tortious interference claim.  *See Hennum v. City of Medina*, 402 N.W.2d 327, 338-39 (N.D. 1987) (evaluating a tortious interference claim on the merits as to an at-will city employee).  Furthermore, it is not just the "at-will" employment contracts that are at issue.  Rather, Schlumberger specifically references the no-solicitation agreement binding Beesley (even after his employment terminated) as the subject of its North Dakota tortious interference claim

(along with any confidentiality, non-compete, and no-solicitation agreements signed by the employees).  D.E. 1, p. 18.  Again, the issue of "justification" is not the basis for CTS's claimed dismissal.  So while North Dakota, unlike Texas, places the burden of proof on that issue on a plaintiff in its prima facie case, a dismissal on that basis is not warranted on the record here.[1]  Because CTS's motion is based solely on the at-will status of the employees rather than the issue of justification or privilege and does not address the collateral agreements signed by employees, the motion must be denied with respect to North Dakota law.

Schlumberger acknowledges that its claim under Louisiana law—LUPTA— cannot be premised merely on hiring away at-will employees.  D.E. 12, p. 16.  It has pled that CTS recruited Schlumberger employees to maintain and use Schlumberger's confidential client information for CTS's benefit—by using the confidential information to solicit and entice Schlumberger's Louisiana clients to redirect their business to CTS.  D.E. 1, pp. 7-8.  Because the employees' at-will status has nothing to do with the claims made against CTS under LUPTA, the motion must be denied with respect to Louisiana law.

With respect to CTS's challenge that Schlumberger has not stated a claim for tortious interference with a contract in Texas, North Dakota, and Louisiana because the employees who CTS hired were at-will employees of Schlumberger, the motion is DENIED.

---

[1]  The elements of a prima facie case in North Dakota are: (1) a contract existed; (2) the contract was breached; (3) the defendant instigated the breach; and (4) the defendant did so without justification.  *Bismarck Realty Co. v. Folden*, 354 N.W.2d 636, 642 (N.D. 1984).

### 2.  Limitations

CTS challenges Schlumberger's tortious interference claims regarding Louisiana operations because they are barred by limitations.  It is undisputed that LUPTA has a one-year limitations period.   La. Rev. Stat. Ann. § 51:1409(E); D.E. 12, p. 17. Schlumberger pled that CTS induced the resignation of Schlumberger's Louisiana employees between July 20 and 30, 2013.  D.E. 1, p. 7.  This action was filed on November 17, 2014, more than one year later.  D.E. 1.  This does not, however, bar the claims.

As set out above, Schlumberger's LUPTA claims are not based solely on being deprived of its employees but on the conduct of those employees with respect to sharing with CTS Schlumberger's confidential information and interfering with Schlumberger's customers.  This is alleged as conduct that is continuing.  D.E. 1, p. 8.  Such ongoing tortious conduct, considered a "continuing violation" of LUPTA, does not trigger the start of the preemptive period until the violation abates.  *Tubos de Acero de Mexico, S.A. v. American Int'l Inv. Corp.*, 292 F.3d 471, 481-82 (5th Cir. 2002).  In its reply, CTS does not dispute this law that allows the tolling of limitations.

Instead, CTS argues that Schlumberger has failed to allege that the employees were bound by confidentiality agreements that would make their alleged conduct unlawful, citing *Defcon, Inc. v. Webb*, 687 So. 2d 639, 643 (La. App. 1984) (providing that one element of a fiduciary duty claim premised on a breach of confidence is an express or implied agreement that limited the use or disclosure of confidential information).  Yet the pleading states, "Schlumberger employees routinely enter into

10 / 17

confidentiality agreements, non-solicitation agreements and non-compete agreements."
D.E. 1, p. 15.   While this allegation appears under the portion of the pleading related to
tortious interference with a contract under Texas law, that allegation is not limited to
employees in Schlumberger's Texas locations.   That allegation, along with all of the
other foregoing allegations, was incorporated by reference into the portion of the
pleading related to LUTPA.   D.E. 1, p. 19.   Thus Schlumberger pled an express
agreement.

CTS then argues that the fact pleadings regarding the continuing use of
confidential information are too conclusory to remain as a viable way to toll limitations.
Given the pleading as a whole, the Court understands that Schlumberger's allegations are
based on circumstantial factual support and a pattern of conduct occurring through many
means.   It has not yet had the opportunity, through discovery, to tie the results of the
conduct that it has experienced to specific acts.   What is important at this stage, however,
is that Schlumberger has alleged factual allegations that raise a right to relief above the
speculative level, thereby sufficiently stating its claim under the requirements of
*Twombly*.   *See Farouk Systems, Inc. v. Costco Wholesale Corp.*, 700 F. Supp. 2d 780,
784-85 (S.D. Tex. 2010).

### 3.   Specificity of All Tortious Interference and LUPTA
### Allegations, Along With Proximate Cause

Adding to its complaints about the adequacy of the pleading, CTS seeks dismissal
of all of the tortious interference and LUPTA claims under the federal pleading rules,
Fed. R. Civ. P. 8, *Twombly*, and *Iqbal*.   The claim is that Schlumberger has not pled with

specificity either the employee and customer agreements or the exact terms of either type of contract—terms with which CTS is accused of interfering.  Instead, the pleading is conclusory or formulaic.  CTS further argues that, without more specificity as to the terms of the non-compete agreements, the Court cannot evaluate whether the agreements are enforceable, given the law rendering some such agreements invalid as restraints on trade.  Last, CTS argues that Schlumberger has not adequately pled proximate cause.

For these arguments, CTS cites a number of cases, including *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 777 (S.D. Tex. 2010).  While the *M-I* court found that the pleadings there were inadequate with respect to tortious interference with customer contracts and tortious interference with prospective business relations, it held that the pleadings were adequate with respect to tortious interference with employee contracts.  The allegations here are similar to those in *M-I* with respect to employee contracts.

Schlumberger pled that Ritter and seven other officials of CTS were former Schlumberger employees with knowledge of how Schlumberger works.  It pled that employees routinely signed confidentiality, non-compete, and no-solicitation agreements ancillary to their employment.  Knowing that, CTS hired away multiple employees—entire workforces—to compete directly with Schlumberger, using the confidential information with which the employees had been entrusted.  According to Schlumberger, the plan is working and its former employees are having a significant impact diverting Schlumberger's former work to CTS—a scenario such agreements are intended to prevent.

CTS suggests that the pleading regarding employee contracts is still insufficient because it does not provide the information required to evaluate whether the agreements are enforceable or void as restraints of trade.  Under Texas law, a non-compete agreement is enforceable if it is made ancillary to another enforceable contract and contains reasonable limits on its duration, geographical bounds, and scope of activity.  Tex. Bus. & Comm. Code § 15.50(a).  While Schlumberger pled that the non-compete agreements were routinely required, ancillary to employment, and were "limited in geographic location, time and scope" (D.E. 1, p. 4), CTS argues that those allegations are conclusory and formulaic.

This does not, however, require the dismissal of these tortious interference claims. It is true that contracts in restraint of trade are vulnerable to modification or being rendered void or unenforceable.  Tex. Bus. & Comm. Code § 15.50.  It is also true that, in a dispute between employer and employee, the burden of persuasion is on the employer. *Id*., § 15.51(b).  However, the statute does not address any pleading requirement.  And the statute does not contemplate the respective burdens with respect to third parties who are strangers to the contract and seek a court determination that the contract is void.

Under Texas law, whether a contract is void or unenforceable in response to a breach of contract claim is an affirmative defense.  *950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship*, 316 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *Parks v. Developers Surety & Indemnity Co*., 302 S.W.3d 920, 923–24 (Tex. App.—Dallas 2010, no pet.).  CTS has not demonstrated that the pleading rules require a plaintiff to anticipate defenses and plead around them.  Neither has CTS demonstrated

that the enforceability of the agreements is an issue that can be determined on a motion to dismiss, given that the statute allows such agreements if they are "reasonable."

CTS raised the same challenge under North Dakota law. The statute in North Dakota provides, "Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind is to that extent void . . . ." N.D. Cent. Code § 9-08-06; *Werlinger v. Mut. Serv. Cas. Ins. Co.*, 496 N.W.2d 26, 30 (N.D. 1993). But Schlumberger's North Dakota allegations do not seek enforcement of a non-compete agreement. They address Beesley's no-solicitation agreement and the employees' confidentiality agreement. Such agreements do not appear on their face to conflict with that statute and CTS has not provided any authority that they violate that or any other North Dakota statute.

With respect to tortious interference with employee contracts, including the employees' ongoing breaches of non-competition, no-solicitation, and/or confidentiality agreements under the laws of the various states, the Court finds that the pleadings are sufficient to raise a right to relief above the speculative level, thereby sufficiently stating Schlumberger's claims under the requirements of *Twombly*. *See Farouk Systems,* 700 F. Supp. 2d at 780. Consequently, CTS's motion to dismiss is DENIED with respect to the tortious interference claims related to employee contracts.

With respect to customer contracts, however, the pleading fails to identify a single customer or contract with which CTS has allegedly interfered. The Court accepts Schlumberger's allegations that CTS's efforts have damaged its business relationships as sufficient at this stage to support its claims for damages arising from the breach of

employee contracts.  Actual customer contracts are not a necessary component to those damages.   However, actual customer contracts are required for a prima facie case of tortious interference with those customer contracts.  Schlumberger recites that it is not making a claim for tortious interference as to customer contracts.  D.E. 12, p. 12, n. 6. Thus, this issue is moot.

### B.  Unfair Competition

#### 1.  Whether "Coil Tubing" is Generic

CTS contends that Schlumberger cannot premise any unfair competition claims on CTS's use of the name Coil Tubing Solutions, compared to Schlumberger's Coil Tubing Services, because "coil tubing" is a generic term that cannot be given trademark status. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc*., 576 F.3d 221, 227 (5th Cir. 2009) (generic terms are not given trademark status).  The classification of a term on the continuum of "fanciful," "arbitrary," "suggestive," "descriptive," and "generic" is a question of fact.  *Id*.

Here, to prove its point that "coil tubing" is generic, CTS attached to its motion screenshots from a number of different industry websites using the term "coil tubing" or "coiled tubing."  D.E. 8-1.  And on reply, CTS refers to an online article for the proposition that, in the energy industry, "coil tubing" includes all of the services that Schlumberger offers.  This is meant to defeat Schlumberger's argument that it provides more than coil tubing services under the coil tubing name, giving the name distinctive significance, rather than being simply generic.  Likewise, Schlumberger has offered USPTO documents suggesting that the term is descriptive, argues that there is a

difference between "coil" and "coiled," and seeks to show that CTS's President has claimed that "Coil Tubing Services" was a protectable trademark in the past—a proposition CTS disputes.

This offer of competing evidence by both parties could not be a clearer indication that the issue is one of fact, requiring the submission of matters outside the pleading, contrary to standards for disposition on a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(d). Given the apparent factual dispute, the Court declines to convert the motion to one for summary judgment under Rule 56. The Court denies the Rule 12(b)(6) motion with respect to CTS's request to dismiss the unfair competition claims on the basis that "coil tubing" is a generic term.

### 2. Specificity of Pleadings With Respect
###    to Claims of Secondary Meaning

Schlumberger's Complaint includes allegations regarding: (1) the specific length of time it has used its marks; (2) that Schlumberger invested in promoting the marks to create source identification; (3) that consumers associate the marks with Schlumberger's services, such that there is name recognition and specific instances of confusion caused by CTS's use of the same or similar name and color; (4) that CTS's President previously worked to create and promote the marks on behalf of Schlumberger and its division's predecessors; (5) that CTS intentionally copied Schlumberger's marks and took geographical positions in close proximity to Schlumberger offices, along with promoting its personnel's prior association with Schlumberger; and (6) that Schlumberger has used the Pantone No. 280 color blue on a consistent, comprehensive, and dominant basis

(including examples) to promote its services for recognition, goodwill, and source identification.

Allegations of this type are relevant to secondary meaning.  *E.g., Compliance Review Servs., Inc. v. Callista Davis-Osuawu*, No. 04-cv-3635, 2006 WL 2385291, *4 (S.D. Tex. Aug. 17, 2006) (using marks to create association between plaintiff and defendant); *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, No. 11-cv-556, 2014 WL 6674034, *8-9 (M.D. La. Nov. 24, 2014) (name recognition and confusion); *Pebble Beach Co. v. Tour 18 1, Ltd.*, 942 F. Supp. 1513, 1540 (S.D. Tex. 1996) (duration and manner of plaintiff's use; plaintiff's investment in promoting the mark for source identification; and the defendant's intent in copying the mark).

Given Schlumberger's allegations, along with the totality of the complaint, the Court finds that Schlumberger has raised its claims of unfair competition above the level of mere possibility into plausibility in satisfaction of *Twombly*.  The Court denies CTS's request to dismiss the unfair competition claims on the basis that secondary meaning was not sufficiently pled.

## CONCLUSION

For the reasons set out above, the Court DENIES CTS's motion to dismiss (D.E. 8).

ORDERED this 16th day of April, 2015.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE